1294

SOUTHERN BELL TELEPHONE & TELEGRAPH CO., Appellant v.
The SOUTH CAROLINA TAX COMMISSION, Respondent.

(377 S. E. (2d) 358)

Court of Appeals

*Fred A. Walters* of *Southern Bell Telephone & Telegraph Co.,* and *A. Camden Lewis,* of *Lewis, Babcock, Pleicones & Hawkins,* Columbia, *for appellant.*

*Chief Deputy Atty. Gen. Joe L. Allen, Jr., Deputy Atty. Gen. Ray N. Stevens,* and *Asst. Atty. Gen. Ronald W. Urban, S. C. Tax Com'n, for respondent.*

Heard Jan. 17, 1989.

Decided Feb. 21, 1989.

SANDERS, Chief Judge:

Appellant Southern Bell Telephone & Telegraph Co. applied for a refund of property taxes from respondent South Carolina Tax Commission. Southern Bell claimed that it qualified for a reduced assessment of certain property pursuant to Section 12-43-220 of the Code of Laws of South Carolina, 1976, as amended. That section makes available a reduced assessment for certain property of manufacturers. The Tax Commission denied the claim on the ground that Southern Bell was not a manufacturer as defined by Section 12-37-1310. That section provides: "Every person engaged in making, fabricating or changing things into new forms for use or in refining, rectifying or combining different materials for use shall be held to be a 'manufacturer.'" Southern Bell petitioned the Circuit Court for judicial review. The Circuit Court dismissed the petition. We affirm.

The facts are undisputed. Southern Bell is in the business of transmitting human speech. It uses electricity for this purpose. Except in unusual circumstances, the electricity is purchased from power companies in the form of A.C., or alternating current (which, according to the record, is "[a] periodic conduction current that reverses its direction at regular intervals"). Alternating current is unsuitable for transmitting human speech. For this reason, Southern Bell converts the alternating current to D.C., or direct current (which, according to the record, is "current that flows in one direction"). It is undisputed that the conversion of alternating current to direct current is included in the present definition of the term "rectifying." Among other things, the statute says that a manufacturer is "every person engaged in ... rectifying." Based on this language, Southern Bell argues that it is a manufacturer.

The history of the statute is instructive, if not conclusive,

in this case.[1] In 1868, the Legislature enacted a statute defining the term "manufacturer."[2] The original statute contained language identical to that of the present statute. In 1882, the same language was readopted verbatim and has persisted unchanged through two statutory compilations and eight codifications.[3] "The cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intent wherever possible." *South Carolina Dep't of Social Servs. v. Forrester*, 282 S. C. 512, 516, 320 S. E. (2d) 39, 42 (Ct. App. 1984). Statutes must be construed "in the light of the conditions obtaining at the time of their enactment." *Judson Mills v. South Carolina Unemployment Compensation Comm'n*, 204 S. C. 37, 41, 28 S. E. (2d) 535, 537 (1944). "[A] statute will be construed as bearing the same meaning as the original statute or section unless [the later statute] plainly requires a change of construction to conform to the manifest intent of the legislature." *South Carolina Elec. and Gas Co. v. Public Serv. Comm'n*, 272 S. C. 316, 321-22, 251 S. E. (2d) 753, 756 (1979).

The record includes the relevant history of electricity. Alternating current was not converted to direct current for commercial purposes until sometime after 1897. Not until 1898 was the conversion of alternating current to direct current included in the definition of the term "rectifying." Thus, when the Legislature used the term in 1868, it could not have had this process in mind.[4] Southern Bell, of course,

---

[1] Reading legislative history is like looking into a crowd and seeing your friends. *See* Aldisert, Book Review of *Super Chief: Earl Warren and His Supreme Court, A Judicial Biography*, by Bernard Schwartz (1983), 72 Calif. L. Rev. 275, 277 (1984) ("To look to history for a scaling of values is to confront the problem of differentiating history from the historians, or in Yeats' words, the dancers from the dance, or in Santayana's, looking over a crowd to find one's friends.").

[2] An Act Providing for the Assessment and Taxation of Property, Act No. 22, § 9, 14 South Carolina Statutes at Large 32 (1868-71) (effective Sept. 15, 1868).

[3] An Act to Provide for the Assessment and Taxation of Property, Act No. 677, § 163, 17 South Carolina Statutes at Large 992 (1879-82) (approved Feb. 9, 1882); 1881-82 General Statutes § 178; 1893 Revised Statutes § 230; 1902 Civil Code § 273; 1912 Civil Code § 302; 1922 Civil Code § 355; 1932 Civil Code § 2632; 1942 Code § 2632; 1952 Code § 65-1661; 1962 Code § 65-1661; and the present codification.

[4] What did the Legislature have in mind when it used the term "rectifying?" An indication is found in the way the term was first used. According

argues that we must give the term its literal meaning, without regard to any extrinsic facts. By this logic, we would be obliged to conclude that the New York Yankees had no players from the South and the Cincinnati Reds adhered to the teachings of Marx.[5] Much of the misunderstanding abroad in the world can be attributed to literal thinking.[6]

In any event, even under a literal reading of the statute, Southern Bell is not a manufacturer. The statute says that a manufacturer is "every person engaged in ... rectifying ... *materials*" (emphasis added). Electricity is not now, nor was it in 1868, a "material."

Moreover, the Tax Commission has never construed the statute defining manufacturers to include telephone companies.[7] "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. South Carolina Bd. of Examiners in Optometry*, 291 S. C. 221, 223, 353 S. E. (2d) 132, 133 (1987). "[W]here the construction of the statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly for a long period of time, such construction is entitled to weight, and should not be overruled without cogent reasons." *Etiwan Fertilizer Co. v. South Carolina Tax Comm'n*, 217 S. C. 354, 359, 60 S. E. (2d) 682, 684 (1950).

Quite aside from the foregoing, we conclude that Southern Bell is not a manufacturer for an entirely different reason. "It is a familiar rule that a thing

---

to the record, an early definition referred to the process of "refining by repeated distillation or sublimation." Early definitions of different forms of the term made specific reference to the liquor business. As everybody knows, the liquor business existed in South Carolina long before 1868. (Of course, we do not imply that the Legislature intended to confine the meaning of the term only to the liquor business.)

[5] We are indebted for this charming analogy to Mordecai Rosenfeld, Esq. of the New York Bar. *See* M. Rosenfeld, No Hall of Fame Niche for ERA Ruling, N.Y. Law Journal at 2 (Feb. 4, 1980) ("By that level of disputation, the Court would consider the Detroit Tigers (who last won a pennant in 1968) to be baseball's fiercest team, and the Oakland A's to be the most scholarly.").

[6] We do not mean to denigrate the argument of counsel for Southern Bell. They have done an excellent job representing their client in this matter.

[7] According to the record, alternating current was first made available to telephone companies about 1915, and Southern Bell began converting alternating current to direct current sometime prior to 1930.

may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." *Rector of Holy Trinity Church v. United States*, 143 U. S. 457, 459, 12 S. Ct. 511, 512, 36 L. Ed. 226 (1892). However plain the ordinary meaning of the words used in a statute, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not have been intended by the Legislature. *State ex rel. McLeod v. Montgomery*, 244 S. C. 308, 136 S. E. (2d) 778 (1964). Frequently, words of general meaning are used which are broad enough to include a particular activity, yet the absurd results which follow make it unreasonable to believe that the Legislature intended to include the activity. *Rector of Holy Trinity Church*, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226.

■ It is undisputed that, not just telephones but all kinds of electronic devices, including copying machines, personal computers and electric typewriters, require direct current for their operation. All these devices convert alternating current to direct current. Even a home television set converts alternating current to direct current. Radio and television stations, cable television systems, and data processing companies, among many other businesses, convert alternating current to direct current as a part of their operations. To conclude that everyone engaged in this process is a manufacturer would lead to a result so plainly absurd that it could not have been intended by the Legislature.[8]

---

[8] In one of its exceptions, Southern Bell asserts error by the Circuit Court in not finding it to be a manufacturer based on the fact that it generates electricity. The record reflects that, in unusual circumstances such as when there is a power failure, Southern Bell sometimes makes it own electricity. However, except for a conclusory statement restating the asserted error, Southern Bell does not argue the exception in its brief. "Exceptions not argued are deemed abandoned." *South Carolina Dep't of Social Servs. v. The Father and Mother*, 294 S. C. 518, 524 n. 23, 366 S. E. (2d) 40, 43 n. 23 (Ct. App. 1988). "[A]n exception [is] deemed effectively abandoned where the argument relating to the exception consist[s] solely of a 'bald conclusion.'" *Williams v. Leventis*, 290 S. C. 386, 390, 350 S. E. (2d) 520, 523 (Ct. App. 1986). In any event, the Circuit Court correctly decided that "the generation of electricity by Southern Bell for emergency situations does not make it a manufacturer." To conclude that everyone who sometimes generates electricity is a manufacturer would likewise lead to a plainly absurd result not intended by the legislature.

Our analysis is no artful dodge to avoid an undesired result. Nor have we judicially usurped the prerogative of the Legislature. Indeed, we have been steadfast in our policy of deferring to the Legislature.[9] The result we reach raises no question about our fidelity to this long-standing policy, but this case may very well demonstrate the distinction between intelligent and unintelligent fidelity. Consider the "Master and Servant." No Master wants a Servant who does not think. Even the most dutiful Servant will sometimes not obey when called by the Master to "drop everything and come running." For example, the Servant will not obey when the Master is unaware, at the time, that the Servant is in the act of rescuing the baby from the rainbarrel.[10] In not obeying, the Servant does not thwart the intent of the Master, but rather gives effect to that intent. Surely, the Legislature expects the same modicum of intelligence from this Court.

For these reasons, the decision of the Circuit Court is

Affirmed.

GARDNER and CURETON, JJ., concur.

---

[9] E.g., *Smith v. Wallace*, 295 S. C. 448, 452, 369 S. E. (2d) 657, 659 (Ct. App. 1988) ("This Court has no legislative powers. In the interpretation of statutes our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature.").

[10] *See* Fuller, The Case of the Speluncean Explorers, 62 Harv. L. Rev. 616 (1949) (where this analogy is used in a hypothetical case).