174 Ariz. 269 (1992)
848 P.2d 848
CANON SCHOOL DISTRICT NO. 50, a political subdivision of the State of Arizona, Plaintiff-Appellant,
v.
W.E.S. CONSTRUCTION COMPANY, INC., an Arizona corporation, Defendant-Appellee.
No. 1 CA-CV 90-094.
Court of Appeals of Arizona, Division 1, Department B.
July 23, 1992.
Reconsideration Denied September 24, 1992.
Review Granted; Denied April 13, 1993.
*270 Favour, Weaver, Moore, Wilhelmsen & Schuyler, P.A. by David K. Wilhelmsen, Lance B. Payette, Prescott, for plaintiff-appellant.
John L. Dillingham and Jaburg & Wilk, P.C. by Dean M. Dinner, Leon B. Silver, Phoenix, for defendant-appellee.
Review Granted on Issues 1, 2, and 3; Cross-Petition for Review Granted on Issue 1 and Denied on all other Issues April 13, 1993.
OPINION
LANKFORD, Judge.
Canon School District No. 50 ("the District") appeals from the superior court's refusal to stay arbitration of a breach of contract claim brought by W.E.S. Construction Company ("W.E.S."). The superior court's judgment denied the stay sought by the District. We affirm in part and reverse in part.
This appeal raises four issues:
(1) Does the dispute resolution procedure created by the State Board of Education procurement rules abrogate either the arbitration procedure approved by Ariz.Rev. Stat. (A.R.S.) § 15-213(D) or an express agreement to arbitrate in the contract?
(2) Does the dispute resolution procedure violate W.E.S.'s right to procedural due process?
(3) Is the District estopped from challenging the validity of the arbitration provision? and
(4) Is the superior court's declaration that the arbitration provision is "valid and enforceable" overly broad in light of the relief sought by W.E.S.?
*271 I.
The District and W.E.S. entered into a contract for the construction of a school building. The contract contained a provision for arbitration of disputes. A dispute arose between W.E.S. and the project architect during construction, and as a result, W.E.S. served the District with a demand for arbitration on the ground that the District had breached the contract.
The District filed a complaint in Yavapai County Superior Court. The District sought an order to show cause why the arbitration proceeding should not be stayed, a declaration that the arbitration provision of the parties' contract was invalid and unenforceable, a stay of the arbitration, and an award of attorney's fees. An order to show cause was entered, and W.E.S. filed an answer to the complaint.
After the hearing on the order to show cause, the superior court denied the request for a stay of arbitration, awarded attorney's fees and costs to W.E.S., and declared the arbitration provision in the contract valid and enforceable.
For reasons discussed below, we affirm the judgment in part and reverse in part.
II.
The first question is whether arbitration was precluded by an exclusive dispute resolution mechanism created by the State Board of Education's procurement rules.[1] The Board's administrative rules contemplate an initial decision by "a district representative" or the district's governing board.[2]
W.E.S. argues that A.R.S. § 15-213(D) expressly permits arbitration of procurement-related disputes. If the exclusive remedy provision in the administrative regulation conflicts with the statute, then the regulation must yield to the statute. See Grove v. Ariz. Crim. Intelligence System, 143 Ariz. 166, 169, 692 P.2d 1015, 1018 (App. 1984).
A.
Our first task is to interpret the scope of A.R.S. § 15-213, and specifically to decide whether arbitration is available in this matter. A.R.S. § 15-213 is entitled, "Procurement practices of school districts; adoption of rules; ... recovery of damages by contractor for delay...."
Subsection (D) of § 15-213 provides:
A contract for the procurement of construction shall include a provision which provides for negotiations between the school district and the contractor for the recovery of damages related to expenses incurred by the contractor for a delay for which the school district is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract. This section shall not be construed to void any provision in the contract which requires notice of delays, provides for arbitration or other procedure for settlement or provides for liquidated damages.

(Emphasis added.)
The first problem in interpreting this statute is determining whether the language protecting arbitration rights covers only disputes involving expenses incurred as a result of delay or extends to all disputes arising under the construction contract. Stated another way, do the words "this section" in the second sentence of subsection D refer to the entire section, and thus include all contract disputes, or to subsection D alone, which deals only with delay claims?
Ordinarily, we would regard a reference to "this section" as encompassing all of the section (here, § 15-213) and not *272 merely a subsection (D). However, we should not frustrate legislative purpose by a wooden interpretation of the Legislature's words. See State Farm Auto. Ins. Co. v. Dressler, 153 Ariz. 527, 531, 738 P.2d 1134, 1138 (App. 1987). "In interpreting statutes it is the spirit of the law that prevails." Id. (citing Navajo Tribe v. Arizona Dep't of Administration, 111 Ariz. 279, 528 P.2d 623 (1974)).
We decline to adopt a literal, wooden application of this legislation. To do so would be unfaithful to the Legislature's wishes. A literal interpretation without regard to the overall legislative scheme would lead us to the absurdity decried in Southern Bell Tel. & Tel. Co. v. South Carolina Tax Comm'n, 297 S.C. 492, 377 S.E.2d 358, 360 (Ct.App. 1989) (Sanders, J.).
By this logic [of literal interpretation], we would be obliged to conclude that the New York Yankees had no players from the South and the Cincinnati Reds adhered to the teachings of Marx. Much of the misunderstanding abroad in the world can be attributed to literal thinking.
Our ultimate duty is to implement legislative intent. One indication of the Legislature's intention is the use of the words "this section" in a very similar statute dealing with state procurement contracts. Because the Legislature appears to have borrowed the language of subsection D from another statute without changing the words "this section" to "this subsection," the reference in § 15-213(D) to "this section" appears to be a draftsman's error.
The error can be traced as follows. The source of § 15-213(D), the school procurement provision, is A.R.S. § 41-2617 of the general state procurement code. The provisions are virtually identical. The procurement code provides:
A contract for the procurement of construction shall include a provision which provides for negotiations between the state governmental unit and the contractor for the recovery of damages related to expenses incurred by the contractor for a delay for which the state governmental unit is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract. This section shall not be construed to void any provision in the contract which requires notice of delays, provides for arbitration or other procedure for settlement or provides for liquidated damages.

(Emphasis added.)
Thus, both statutes state that the mandatory contract provision for negotiations will not void any arbitration provision in the contract. The only subject of § 41-2617 is resolution of delay claims against the State. We conclude that the subject of § 15-213(D) is similarly limited to delay claims.
The conclusion that § 15-213(D) applies only to delay claims is supported by the rule of statutory construction that parallel terms in statutes enacted during the same legislative session as "aspects of a systematic approach" are interpreted the same way unless contrary to clear legislative intent or public policy. Dieckmann v. Superior Court (International Harvester), 175 Cal. App.3d 345, 220 Cal. Rptr. 602 (1985). Sections 15-213(D) and 41-2617 both were enacted at the same time, concern procurement by governmental bodies, and contain virtually identical language. (Laws of 1987, ch. 266, § 1 and § 3.) These statutes should therefore be construed consistently.
The words "this section" in the second sentence of § 15-213(D), therefore, have the same meaning as the same words in § 41-2617. The latter statute clearly preserves arbitration only for government-caused delay claims, not for all claims arising out of government procurement contracts. As a result, the arbitration provision in § 15-213(D) also applies only to delay claims.[3]
*273 Finally, the legislative history supports this construction. The minutes of the House Committee on Government reveal that the purpose of the bill to amend § 15-213 by adding subsection (D) was to "provide for recovery of damages by a contractor from a public agency for unreasonable delays in a construction project caused by the public agency." (Emphasis added.)
Therefore, we hold that the exclusive remedy regulation conflicts with A.R.S. § 15-213(D), but only to the extent that the statute preserves arbitration solely for delay claims against a school district.
B.
We next consider whether the exclusive administrative remedy regulation can nevertheless be sustained because it is authorized by another statute. According to the District, the exclusive remedy rule was authorized by A.R.S. § 15-213(A),[4] which provides that the State Board of Education's procurement rules be "consistent with the procurement practices prescribed in title 41," i.e., the general procurement rules. Because the general procurement statute contains an exclusive remedy provision, the District argues, the Board of Education could also enact an exclusive remedy rule.
Section 41-2615 of the state procurement code provides:
Notwithstanding any law to the contrary, including the provisions of ... title 12, chapter 9, article 1, [validity of arbitration agreements] this article and the rules promulgated under this article shall provide the exclusive procedure for asserting a claim against this state or any agency of this state arising in relation to any procurement conducted under this chapter.
(footnote omitted.)
The Board's rule, A.C.R.R. 7-2-1184, entitled "Exclusive remedy," provides:
This Article [Article R10, School District Procurement Code; A.C.R.R. 7-2-1001 et seq.] provides the exclusive procedure for asserting a cause against the school district and its governing board arising in relation to any procurement conducted under this Article.
We agree that the rule is generally valid. It bars arbitration by making the procurement procedures exclusive remedies. However, the general rule must yield to the statute which specifically addresses delay claims in § 15-213(D). That provision expressly preserves arbitration for claims for expenses due to district-caused delays.
In short, in all instances except those, such as delay claims, which are subject to a specific statutory provision, A.C.R.R. 7-2-1184 effectively precludes arbitration and compels use of the exclusive administrative remedy. In the instant case, the contract provided for arbitration. That procedure is preserved by § 15-213(D). Consequently, W.E.S. may arbitrate its claims to the extent they involve damages related to a delay caused by the school district.
III.
W.E.S. also challenges the District's exclusive dispute resolution procedures on due process grounds. This issue remains viable to the extent that W.E.S. claims damages other than for delay.
*274 Preliminarily, W.E.S. argues that when the District failed to respond in the superior court to the "defenses" posed by W.E.S. to the request for a stay of the arbitration, the District waived the opportunity to respond to or is estopped in this appeal from responding to W.E.S.'s due process challenge of the District's dispute resolution procedures.
The rule against admitting new theories on appeal does not apply because the District did not have an opportunity to submit a written response to W.E.S.'s memorandum prior to the hearing on the order to show cause. The rule is primarily procedural and is designed to prevent unfair surprise. Brown v. Arizona Public Service Co., 164 Ariz. 4, 790 P.2d 290 (App. 1990).
In addition, the order to show cause proceeding was quite summary. The superior court possessed only a copy of the District's complaint, W.E.S.'s answer, and a legal memorandum filed by W.E.S. at the hearing.[5] Neither party argued the due process or estoppel issues at that time. The superior court simply denied the District all relief requested without stating the grounds for that ruling.
The District cannot be expected to have responded to these issues before this appeal. Furthermore, the District has not raised new theories but has merely responded to arguments made by W.E.S.W.E.S. cannot be surprised by these theories, and the purpose for the rule will not be served by applying it in this case. Therefore, we will address the due process and estoppel claims.
A.
W.E.S. claims that the District's dispute resolution provisions violate its right to procedural due process on two grounds. First, W.E.S. argues the school board as a whole and its members individually have a pecuniary interest in the outcome of the dispute that prevents the board from acting fairly. Second, W.E.S. argues that because the board acts both as the initial finder of fact and as the appellate body, the process itself is unfair.
Our supreme court has held that a party is denied procedural due process only when an official acting in a judicial or quasi-judicial capacity has "a direct, personal, substantial, pecuniary interest in reaching a conclusion against a litigant." Ison v. Western Vegetable Distributors, 48 Ariz. 104, 118-19, 59 P.2d 649, 656 (1936). In Ison, petitioner claimed that giving the Industrial Commission power to decide whether a case falls within the terms of the workers' compensation statute denied petitioner a fair and impartial tribunal. The salaries of the Commission members were neither increased nor decreased by any decision to award or withhold compensation benefits. The compensation fund over which the Commission presided was not raised by general taxation but by an assessment on employers. The fund was to be self-supporting and no more. Under these circumstances, the court was unwilling to assume an honest commissioner would be unfairly biased in any direction. Id. at 120, 59 P.2d at 656.
The pecuniary interest of the school district governing board in the outcome of this dispute is not personal. The interests of the board members do not rise to the level which violates due process. For example, the board's interest is unlike that of a mayor who also sits as a judge and receives a fee in excess of his salary from the fines imposed. Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927). The United States Supreme Court later distinguished Tumey in Dugan v. Ohio, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). It approved a procedure under which the *275 city commission fixed the mayor-judge's salary which was not tied to the convictions or fines charged. The record before us does not reveal that the District's board members are compensated based on either construction contract savings or the District's finances generally; indeed, W.E.S. has not even shown that the board members are compensated at all for their service.
W.E.S. relies on Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), but the facts are considerably different. In Gibson, all of the members of the state optometry board were opticians in private practice. The board members attempted to ban from practice all corporate optometrists, who constituted nearly half of the optometrists in the state. The obvious pecuniary gain the board members derived from the ban prevented a fair hearing of the issue before impartial decision-makers and thus constituted a denial of due process.
Here, W.E.S. made no showing of a direct, substantial, personal, pecuniary gain to each member individually or to the board as a group. The participation of board members in dispute resolution does not deprive W.E.S. of its due process rights.
B.
W.E.S. also alleges that the governing board's participation in the initial fact-finding phase of the dispute results in a biased judgment at the adjudicatory phase and thus constitutes a denial of due process.
The procedure for resolving procurement disputes is not so unfair that it denies due process. Under the procedure established in the school district procurement code, the dispute is initially decided by the "district representative" pursuant to A.C.R.R. 7-2-1155 and A.C.R.R. 7-2-1156. The "district representative" is defined as "a district employee who has been closely involved in the procurement being protested or shall be the governing board...." After the initial decision by the district representative or board, the parties have a right to appeal to the governing board and to a hearing on the issues. A.C.R.R. 7-2-1158 and A.C.R.R. 7-2-1181. The parties may also move for a rehearing by the board pursuant to A.C.R.R. 7-2-1182. Finally, the parties have a right of judicial review under A.R.S. §§ 12-905 to 914.
The joining of investigative and adjudicative functions in an agency is not alone a violation of due process: a showing of actual bias or partiality must be made. Havasu Heights v. Desert Valley Wood, 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App. 1990).
In an administrative proceeding in which the agency has both investigative and adjudicative responsibility, "it will be necessary for the agency to receive the results of investigations, to make preliminary decisions or approve the filing of formal charges, and then to participate in the resulting hearings. This type of procedure does not violate due process of law." DeGroot v. Arizona Racing Comm'n, 141 Ariz. 331, 341, 686 P.2d 1301, 1311 (App. 1984).
Furthermore, "[m]ere familiarity with the facts of the case gained by an agency in the performance of its statutory role does not disqualify the decision maker." Hortonville Joint School District No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976). Without evidence of bias or actual prejudice in the record, we simply cannot determine that the governing board here would have improperly prejudged the issues. Thus we hold that the combination of the investigative and adjudicative functions in this case, without more, does not violate due process.
Finally, W.E.S. contends that because members of the governing board would be "key witnesses" in the dispute resolution process, its right to procedural due process is violated. However, while the architect involved in this dispute with W.E.S. would likely be a key witness, he is not a member of the board. The record fails to show that current board members would be "key witnesses" in a dispute based upon facts which occurred almost three years ago, and *276 we are unwilling to assume such to be the case.
IV.
The third issue is whether the District is estopped from challenging the validity of the arbitration provision when it signed the construction contract, presumably with knowledge of its contents. As a general rule, estoppel will not lie against a political subdivision, such as the school district, when fulfilling its governmental rather than proprietary functions. Neal v. City of Kingman, 167 Ariz. 574, 581, 810 P.2d 572, 579 (App. 1990); Oracle Sch. Dist. No. 2 v. Mammoth High Sch. Dist. No. 88, 130 Ariz. 41, 633 P.2d 450 (App. 1981).
Although an Arizona court has not ruled on this question, other jurisdictions have found construction and maintenance of schools a governmental rather than a proprietary function. See City of Baltimore v. Baltimore Gas and Elec. Co., 232 Md. 123, 192 A.2d 87 (1963); Fowler v. Bd. of Regents, 637 S.W.2d 352 (Mo. App. 1982); and Lovell v. School Dist. No. 13, Coos County, 172 Or. 500, 143 P.2d 236 (1943). We hold that the District was acting in a governmental rather than a proprietary capacity when it executed the construction contract with W.E.S. and for this reason cannot be estopped from challenging its validity.
W.E.S. nevertheless argues that an exception exists to the general rule that estoppel will not lie against the sovereign. Our supreme court relied on United States v. Lazy FC Ranch, 481 F.2d 985 (9th Cir.1973), to hold that estoppel applies when the government's wrongful conduct threatens to work a serious injustice and the public interest would not be unduly damaged by the bar of estoppel. Freightways, Inc. v. Arizona Corporation Commission, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981).
W.E.S. claims injustice would result if it were forced to split its claim between two forums (arbitration and administrative remedy) or if it were foreclosed from employing the less expensive, less complicated procedure of arbitration. We cannot agree that this rises to the level of such serious injustice that the District should be estopped. The inconvenience of splitting resolution of procurement disputes arises only when both delay-related expenses for which the district is responsible and other types of damages arise out of the same contract. Nor does it appear that the administrative remedy is substantially less efficient than arbitration. Thus, the trial court correctly declined to apply the exception and correctly declined to estop the District from challenging the validity of the arbitration clause.
V.
Finally, the District argues that the trial court's judgment declaring the arbitration provision in the contract "valid and enforceable" is overly broad because the District merely requested a finding that the arbitration provision was "invalid and unenforceable" pursuant to A.C.R.R. 7-2-1184.
As explained above, the administrative rule makes arbitration unavailable except when the contract between the parties so provides and the claim in dispute is for delay-related expenses for which a district is responsible. The superior court's judgment is affirmed to the extent consistent with this holding. The judgment is reversed, however, to the extent it holds claims for expenses other than those for district-caused delays are arbitrable.
VI.
The District seeks attorney's fees pursuant to A.R.S. § 12-341.01(A) both for the action in the superior court and on appeal, "if it prevails." A.R.S. § 12-341.01 provides that, "In any contested action arising out of contract ... the court may award the successful party reasonable attorney's fees." Thus, the award of fees is discretionary with the court, and the court may reduce the amount awarded if a party is not successful on all claims. Patton v. Mohave County, 154 Ariz. 168, 173, 741 P.2d 301, 306 (App. 1987).
When the ultimate or underlying issues in a case have not been decided in the *277 appeal, the meaning of "successful party" is less clear. In Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 392, 710 P.2d 1025, 1047 (1985), the plaintiff appealed and secured a reversal of the trial court's entry of summary judgment against her. She then claimed she was the successful party on appeal, regardless of the outcome on the merits of the underlying claims, and was entitled to attorney's fees.
"[S]uccessful party" on appeal is not limited to those who have a favorable final judgment at the conclusion of the appeal process. It may include those who achieve reversal of an unfavorable interim order if that order is central to the case and if the appeal process finally determines an issue of law sufficiently significant that the appeal may be considered as a separate unit.
Id. at 393-94, 710 P.2d at 1048-49; See Citibank (Arizona) v. Miller & Schroeder Financial, 168 Ariz. 178, 184, 812 P.2d 996, 1002 (App. 1990).
In view of the District's limited, partial success on appeal, neither party is the "successful party" within the meaning of the statute. We decline to award attorney's fees without prejudice to an application by the successful party upon resolution of the merits.
VII.
In conclusion, we hold that A.R.S. § 15-213(D) protects W.E.S.'s contractual right to arbitrate its claims for expenses incurred for delays. However, the procurement rules can and do require that other procurement-related disputes be resolved, at least initially, by the administrative procedures contained in A.C.R.R. 7-2-1155 and 7-2-1156.
The superior court's judgment is affirmed insofar as it held the arbitration provision in the procurement contract was enforceable. However, arbitration is available only when the contract so provides and the dispute is over delay-related expenses for which the District is responsible.
We reverse the judgment below to the extent it permits arbitration of claims for other types of damages.
McGREGOR, P.J., and GARBARINO, J., concur.
NOTES
[1] A.C.R.R. 7-2-1184, entitled "Exclusive remedy," provides:

This Article [Article 10, School District Procurement Code; A.C.R.R. 7-2-1001 et seq.] provides the exclusive procedure for asserting a cause against the School District and its governing board arising in relation to any procurement conducted under this Article.
[2] The rules provide that to resolve a contract claim, the claim must first be submitted to the "district representative." The district representative shall issue a written decision within sixty days from receipt of the written demand. A.C.R.R. 7-2-1156. Appeals from the decision of the district representative may be taken to the school district governing board. A.C.R.R. 7-2-1158; A.C.R.R. 7-2-1181; A.C.R.R. 7-2-1182.
[3] The structure of § 15-213 also persuades us that the words "this section" in subsection D refer only to subsection D, and thus only to delay claims. The second sentence of paragraph D immediately follows the first sentence and quite reasonably can be viewed as referring to it. If the Legislature had intended not to restrict the right of arbitration to delay damages caused by the school district, then it would not have inserted the arbitration clause as a sentence in subsection D but would have created a separate paragraph or subsection of § 15-213 to indicate the scope of that clause was broader than just delay claims.
[4] A.R.S. § 15-213(A) provides:

A. The state board of education shall adopt rules prescribing procurement practices for all school districts in this state as follows:
1. The state board shall submit to the auditor general proposed rules consistent with the procurement practices prescribed in title 41, chapter 23, modifying the provisions for public notice of invitation for bids to allow a governing board to give public notice of the invitation for bids by publication in the official newspaper of the county as defined in § 11-255 ... providing for governing board delegation of procurement authority and modifying as necessary other provisions which the state board determines are not appropriate for school districts, for all construction which exceeds fifteen thousand dollars in total cost, for all materials which exceed ten thousand dollars in total cost and for all services which exceed ten thousand dollars in total cost.
(Footnote omitted.)
[5] The memorandum related the following "defenses":

(1) The dispute resolution procedures articulated in the school district procurement rules apply only in absence of a contract to arbitrate;
(2) The State Board's attempt to provide exclusive dispute resolution procedures exceeds the authority granted by A.R.S. § 15-213;
(3) A.C.R.R. 7-2-1184 conflicts with A.R.S. § 15-213.D and is therefore void;
(4) A.C.R.R. 7-2-1184 and the dispute resolution procedures articulated therein violate W.E.S.'s right to procedural due process; and
(5) The School District is estopped from challenging the terms of the contract which it executed.