868 P.2d 1014

**CANON SCHOOL DISTRICT NO. 50, a political subdivision of the State of Arizona, Plaintiff–Appellant,**

v.

**W.E.S. CONSTRUCTION COMPANY, INC., an Arizona corporation, Defendant–Appellee.**

**1 CA–CV 91–0518.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 30, 1993.

Review Granted Feb. 15, 1994.

434

Horne, Kaplan & Bistrow, P.C. by Thomas C. Horne and Martha B. Kaplan, Phoenix, and Favour, Moore, Wilhelmsen, Payette & Schuyler, P.A. by David K. Wilhelmsen, Prescott, for plaintiff-appellant.

Dillingham, Keilp & Cross, P.C. by John L. Dillingham, Phoenix, for defendant-appellee.

## OPINION

LANKFORD, Judge.

This appeal from an action to confirm an arbitration award raises two issues:

(1) Did the superior court abuse its discretion by confirming the arbitration award despite the arbitrators' refusal to grant a continuance after counsel discovered a conflict of interest shortly before the arbitration hearing?

(2) Did the superior court err in awarding attorney's fees to W.E.S.?

In 1989, Canon School District No. 50 entered into a contract with W.E.S. Construction Co., Inc., ("the contractor") to construct a building at the Checkerboard School in Black Canyon City for the sum of $375,000. The contractor was to begin construction within five days of the date of the agreement and to complete construction within 120 days. The contract required the school district to obtain all necessary regulatory approval for the project to proceed. Under paragraph 7.9 of the contract, most disputes were to be referred to arbitration by the American Arbitration Association ("AAA").

Problems developed between the contractor and the project architect, George Myers. The contractor suspended construction and refused the district's demands that it resume. The Yavapai County Attorney, acting for the school district, wrote to the contractor's attorney that "[a]ll requirements of pertinent regulatory agencies have been met and the District requests that [the contractor] continue construction of the building immediately." When the parties failed to resolve their differences the contractor gave written notice that it was discontinuing work based on the architect's lack of cooperation and his refusal to abide by the terms and conditions of the agreement. Its letter stated:

> Following our May 12th conference, my client and I were hopeful the architect would cooperate so that construction could resume promptly.

Unfortunately, the architect has continually failed to respond to legitimate requests, failed to meet with my client and failed to process Pay Request No. 3 in accordance with the terms of the contract. As such, my client has no alternative but to declare the owner to be in breach of contract thereby discharging the contractor from any further obligations under the January 25, 1989 Agreement.

· · · · ·

> Under these circumstances and based upon the failure to respond to submittals and failure to timely honor Pay Requests, my client is declaring the owner in breach of contract and is discontinuing its efforts on this project. As indicated, we are in the process of preparing a claim which will be submitted to Yavapai County. Please be advised my client will remove all of its property from the jobsite in the next few days.

The contractor subsequently filed a demand for arbitration with the AAA, claiming that the district's breach of contract had caused approximately $14,000 in damages. The district filed a counterclaim seeking damages for the contractor's failure to perform the work.

The school district then filed a petition in the superior court seeking a stay of arbitration on the grounds that the procurement rules of the State Board of Education required the dispute be referred to a district representative or the district's governing board for resolution. The superior court found article 7.9 valid, dismissed the suit and denied the district's request for a stay of execution. The district filed a notice of appeal but this court denied its request for a stay.[1] It then filed a petition for special

---

**1.** This court rendered its opinion in that appeal, *Canon School District No. 50 v. W.E.S. Constr. Co.,* 174 Ariz. 269, 848 P.2d 848 (App.1992), *review granted,* April 13, 1993. We held:

A.R.S. § 15–213(D) protects W.E.S's contractual right to arbitrate its claims for expenses incurred for delays. However, the procurement rules can and do require that other procurement-related disputes be resolved, at least initially, by the administrative procedures contained in A.C.R.R. 7–2–1155 and 7–2–1156.

The superior court's judgment is affirmed insofar as it held the arbitration provision in the procurement contract was enforceable. However, arbitration is available only when the contract so provides and the dispute is over delay-related expenses for which the District is responsible.

We reverse the judgment below to the extent it permits arbitration of claims for other types of damages.

at 277, 848 P.2d at 856.

action, but we declined jurisdiction and the supreme court denied review.

The district had also filed a complaint in the Yavapai County Superior Court against the contractor and Transamerica Insurance Company. The district sought money damages for the contractor's alleged breach of the contract and sought recovery against Transamerica both under its statutory performance bond and for alleged bad faith denial of the district's claim. The contractor obtained a superior court order staying this action pending arbitration.

A conflict of interest problem subsequently arose for the district's counsel. On June 5, the office of the Arizona Attorney General substituted as counsel for the district and Charles Pierson, an assistant attorney general in the civil division, was assigned to the case. The civil division also represents the State Fire Marshal, an officer of the Department of Building and Fire Safety. Pierson had acted as the fire marshal's counsel.

In response to a request from the AAA dated March 5, 1990, the contractor had listed as witnesses for the arbitration hearing three employees of the fire marshal's office. In fact, one listed witness was the State Fire Marshal. These witnesses were expected to testify to the difficulty the fire marshal had in getting the architect's cooperation in approving project plans. The district had also listed as exhibits various letters and documents from the fire marshal's office. These included correspondence to the effect that the fire marshal had not given statutorily required approval for the construction project to proceed.

Pierson informed opposing counsel of the attorney general's representation of the fire marshal and warned this might involve a conflict of interest. These disclosures occurred in July and September of 1990.

In early October 1990, the arbitrators allowed the contractor to add the issue of whether the fire marshal had approved the project. At approximately the same time, counsel for the contractor wrote a letter to the attorney general's office in which he claimed that the fire marshal had not approved the project until April 2, 1990:

This morning I met with Jan Fontana of the Office of the State Fire Marshall [sic], Department of Building and Fire Safety. This meeting revealed new facts of which my client and the undersigned were completely unaware.

Approval of the project documents by the Department of Building and Fire Safety, which would permit construction pursuant to A.R.S. § 41–2163, was not obtained until April 2, 1990, almost a full year after my client left the project. Please find enclosed a copy of Jan Fontana's April 2, 1990, correspondence to Robert Gomez, who replaced Mr. Myers on the project. This information and letter was received by the undersigned for the first time this morning.

In addition, on May 11, 1989, Ms. Fontana wrote Mr. Myers and informed him that the project documents did not conform to the requirements of the code and that additional items still needed to be clarified before the project could be approved.

These facts conclusively demonstrate that at the time of the May 12th meeting under no circumstances could construction of this project resume. Thus, Tom Kelly's May 1st letter misrepresents the fact that "all requirements of pertinent regulating agencies *have been* met" such that construction may continue immediately. Again at the May 12th meeting, it was misrepresented to W.E.S. that construction was allowed to continue.

It is now quite clear that even had my client received the necessary information which would have physically allowed construction to resume, that without the fire marshal's approval construction could not continue. Since the inception of this dispute, the school district was intimately aware that final approval of the plans had not been received by the Department of Building and Fire Safety....

Needless to say, I was shocked to learn of this information....

On October 10, 1990, the contractor filed an "amended list of witnesses and exhibits in support of pre-hearing memorandum" which contained a letter dated April 2, 1990 from the fire marshal, approving the project:

*EXHIBITS*

. . . . .

*State Fire Marshall's [sic] Documents*

Also listed as an exhibit and attached hereto is a document only recently produced by the State Fire Marshall's [sic] office pursuant to Claimant's subpoena. Such document is a letter of April 2, 1990 from the Office of the State Fire Marshall, [sic] Department of Building and Fire Safety, granting final approval as of such date to the project documents.

. . . . .

## SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS

1. The Office of the State Fire Marshall [sic] only gave final approval to the project documents on April 2, 1990, contingent on a favorable field inspection.

On October 26, 1990 assistant attorney general Pierson moved for leave to withdraw as counsel and for a continuance of the arbitration hearing scheduled for November 4. He stated that by injecting the issue of fire marshal approval, W.E.S. had "change[d] . . . its theory of the case" placing the attorney general's office amid a conflict between its two clients, the school district and the fire marshal. Because the hearing was less than a week away, Pierson requested a continuance so that the district could obtain new counsel.

The fact that employees of the fire marshal had been listed previously as witnesses does not indicate that Pierson should have recognized the conflict earlier. The contractor had stated that the fire marshal employees would testify as to "the difficulties the State Fire Marshal had in getting [the architect] to comply with their requirements for construction." At that time, the reasons for the contractor's refusal to complete the contract were the architect's failure to respond to the contractor's requests for information and his failure to process pay requests. The fire marshal's approval was a peripheral issue at best. The actual conflict did not arise until later, when the issue of fire marshal approval was added to the arbitration.

The addition of the fire marshal issue placed Pierson in a difficult position. After the contractor filed its amended list of witnesses, Pierson began to investigate the validity of the contractor's position. The investigation divulged the following. Thomas Kelly, an Assistant Yavapai County Attorney who had represented the district early in the dispute, would testify that the fire marshal had given verbal permission to proceed with construction, even though he had not approved the plans in writing. The Superintendent of schools and a school board member would testify in support of Kelly's version. The witnesses from the fire marshal's office, on the other hand, would dispute Kelly's version. Pierson believed that the attorney general's office had a conflict of interest. As Pierson explained in the motion to withdraw as counsel and motion for continuance of the arbitration hearing:

> Obviously, competent presentation of the District's case will involve cross-examination of Mr. Alley, Ms. Fontana and Paul Saunders, former State Fire Marshal, in an attempt to discredit their testimony on this point. In addition, the District's case will include argument that the State Fire Marshal misread A.R.S. § 41–2163(B), as it existed in 1989 (the statute providing for plan review and approval by the State Fire Marshal), and in fact the District was legally justified in commencing construction prior to the approval of plans by the State Fire Marshal, regardless of the factual dispute.

The contractor acceded to the attorney general's desire to withdraw as counsel but objected to any continuance. After hearing oral argument, the arbitration panel denied both the motion to withdraw and the motion to continue. Pierson associated Phoenix attorney Thomas C. Horne as counsel to assist in the hearing the next day.

After the panel heard evidence on the contractor's claim and the district's counterclaim, it entered its award in favor of the contractor on both the claim and counterclaim. The panel awarded the contractor $107,651.68 plus prejudgment interest and costs and expenses.

Following the arbitrators' award, the contractor filed an answer and counterclaim in the superior court action seeking confirmation of the award pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–1511. The district opposed confirmation under A.R.S. sections 12–1512(A)(3) and (4). The court nevertheless entered judgment confirming the award, and awarded the contractor costs and attorney's fees incurred both in the arbitration and in the superior court. The district filed a timely notice of appeal and we have jurisdiction pursuant to A.R.S. section 12–2101(B).

## I.

■ We first address whether the superior court abused its discretion when it confirmed the arbitration award. Because the public policy of this state favors arbitration, *Einhorn v. Valley Medical Specialists*, 172 Ariz. 571, 572, 838 P.2d 1332, 1333 (App. 1992); *Jeanes v. Arrow Ins. Co.*, 16 Ariz.App. 589, 591, 494 P.2d 1334, 1336 (1972), judicial review of arbitration awards is limited. To that end, the Legislature has adopted the Uniform Arbitration Act, A.R.S. sections 12–1501 to 12–1518, which limits judicial review of arbitration awards. "In deference to the parties' contractually agreed-upon means of dispute resolution, and to avoid undermining the objectives of arbitration as an inexpensive and speedy final disposition of the parties' controversy, judicial review of an arbitration award is limited." *Einhorn*, 172 Ariz. at 572–73, 838 P.2d at 1333–34. The arbitrators' decisions are accorded great deference and can only be set aside in very limited circumstances. *See Smitty's Super–Valu, Inc. v. Pasqualetti*, 22 Ariz.App. 178, 180, 525 P.2d 309, 311 (1974). Within the confines of the arbitration, the decision of the arbitrators as to the facts and law is final and cannot be reversed by a court, even if the court believes the ruling to be erroneous. *Id.*

■ A trial court's order on a motion to continue will be affirmed on appeal absent an abuse of discretion, *e.g.*, *In re Estate of Kerr*, 137 Ariz. 25, 29, 667 P.2d 1351, 1355 (App. 1983), and the same standard applies when a trial court reviews an arbitrator's decision on

such a motion. *Melton v. Lyon*, 108 N.M. 420, 423, 773 P.2d 732, 735 (1989).

■ The district's opposition to confirmation of the award rested on grounds recognized by statute as sufficient to deny confirmation: the improper refusal to postpone the hearing. The district relied on A.R.S. section 12–1512(A)(4):

A. Upon filing of a pleading in opposition to an award, and upon an adequate showing in support thereof, the court shall decline to confirm and award and enter judgment thereon where:

. . . . .

4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor. . . .

■ Our task is to decide whether the superior court abused its discretion when it refused to set aside the award pursuant to A.R.S. section 12–1512(A)(4) after finding that the arbitrators had not abused their discretion by denying the motion to continue. We review the refusal of a trial court to set aside an arbitration award under an abuse of discretion standard. *See Park Imperial, Inc. v. E.L. Farmer Constr. Co.*, 9 Ariz.App. 511, 514, 454 P.2d 181, 184 (1969). However, an abuse of discretion includes "an error of law committed in the process of reaching the discretionary conclusion." *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982) (Feldman, J., supplemental opinion). We review errors of law *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

The school district argues that its counsel was suddenly faced with an irreconcilable conflict of interest at a time when it was too late for new counsel to prepare for the hearing, a situation which required the arbitrators to continue the hearing. To resolve this issue, we must determine whether there was a conflict of interest and, if so, whether the superior court abused its discretion by refusing to set aside the award.

■ Because the fire marshal's interests were directly adverse to the district's, the attorney general had an actual conflict of

interest. The ethical rule governing conflicts of interest states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

ER 1.7, Ariz.Sup.Ct.R. 42. The purpose behind the conflict of interest rule is to maintain attorneys' loyalty to their clients. *Id.,* cmt. With respect to litigation, the comment states:

> Conflicts in Litigation
>
> Paragraph (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (b). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question....

*Id.*

■ A lawyer may not represent clients with antagonistic positions on a legal question when either client would be harmed by that representation: "A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, *unless representation of either client would be adversely affected." Id.* (emphasis added). Pierson faced such a situation in this case.

When it became clear that the fire marshal's approval of the project would be an issue, the discrepancy between the district's and the fire marshal's positions clearly precluded Pierson from representing the school district. The fire marshal, as a continuing client, was entitled to expect that the attorney general and Pierson would remain loyal to it. *See Alexander v. Superior Court,* 141 Ariz. 157, 163, 685 P.2d 1309, 1315 (1984) (in case of a conflict, the lawyer owes primary responsibility to a long-standing client; the other client should obtain other counsel). Pierson's duty of loyalty barred him from arguing against the fire marshal's position and vigorously cross-examining fire marshal personnel, something he would have to do to fulfill his duty of loyalty to the district. Allowing Pierson to directly attack the fire marshal in this proceeding could reasonably be expected to cause the fire marshal to question his attorney's loyalty.

Although the fire marshal was not a party, the situation nevertheless posed a conflict. When faced with the choice of either ignoring or harming one client's interests to serve his other client, Pierson faced an irreconcilable conflict of interest. To represent the district, Pierson would be forced to make arguments contrary to the fire marshal's interests. Under ER 1.7, Pierson and the attorney general's office could not ethically continue to represent the district against the interests of the fire marshal.[2]

*State v. Jenkins,* 148 Ariz. 463, 715 P.2d 716 (1986) presented a similar situation. The investigating detective hired Jenkins' attorney to handle the detective's divorce. The attorney had little, if any, direct contact with the detective, and the issues involved in the divorce had nothing to do with the pending

---

**2.** We do not imply criticism of Pierson's continued activity in this case after the conflict arose: the arbitrators' order refusing to allow him to withdraw required that he continue. *See* ER 1.16(c).

criminal matter. Nonetheless, the attorney's representation of both Jenkins and the detective was a direct conflict of interest. 148 Ariz. at 465, 715 P.2d at 718. This conflict raised serious questions about whether his cross-examination of the detective was as vigorous as it should have been. 148 Ariz. at 468, 715 P.2d at 721.

 This case presents an even stronger conflict than that involved in *Jenkins*. Pierson would have been forced to advance a position directly in conflict with the fire marshal's position. In doing so, Pierson would have had to cross-examine fire marshal personnel and attack their credibility. This is an intolerable situation that should not be allowed to exist. "An attorney's loyalty to his client is not just a casual obligation to be turned on or off as the dictates of the moment indicate or particular employment may demand." *In re Evans*, 113 Ariz. 458, 462, 556 P.2d 792, 796 (1976). As the Texas Court of Appeals stated:

> To have an attorney standing in open court before a jury and the public, who have a right to be present, attempting to represent conflicting interests creates a situation which should never occur under our adversary system of trying cases. Such a situation discredits the legal profession, and lowers the dignity of the court. It should never be permitted, even if agreeable to the adverse parties.

*J.W. Hill & Sons, Inc. v. Wilson*, 399 S.W.2d 152, 154 (Tex.Civ.App.1966) (citations omitted).[3] Similarly, a tribunal should not permit or require an attorney to discredit one client in order to advocate the position of another client in the same proceeding. Clearly, Pierson faced an actual conflict of interest.

 The contractor contends Pierson should have recognized the conflict of interest much earlier than he did and that it was this delay that brought about the need to find new counsel on short notice. It therefore argues the arbitrators did not abuse their discretion in denying the continuance.

 It is not entirely clear that the attorney general should have filed the motion earlier. An attorney can represent different clients with possible adverse interests, as long as their interests do not presently conflict and do not seem likely to come into conflict. *Alexander v. Superior Court*, 141 Ariz. at 163, 685 P.2d at 1315. *See* ER 1.7 and cmt.[4] Thus, the bare possibility that a conflict might arise at some unforeseen date did not require the attorney general to decline to represent the district.

The record does not show that Pierson should have recognized a conflict earlier. The issues in the arbitration initially dealt with the contractor's reasons for discontinuing performance, as outlined in its May 23, 1989 letter: (1) the architect's failure to respond to legitimate requests for information and guidance; and (2) his failure to approve pay requests. Neither of these issues directly implicated the involvement of the fire marshal. Although employees of the fire marshal were listed as witnesses long before the hearing, Pierson expected their testimony to relate to the architect's lack of cooperation, not the issue of whether the fire marshal had approved the project. The fire marshal's approval became an issue within a month of the hearing, when counsel for the contractor wrote the letter and filed the amended list of witnesses adding this issue to the proceedings.

The arbitration panel abused its discretion when it denied the motion to continue. The panel should not have required Pierson to continue representing the district after the conflict of interest arose. Moreover, the panel should have allowed the district time to associate new counsel.

---

3. The force of *J.W. Hill* is not diminished by the fact that the conflict arose in arbitration rather than in the court. Arbitration proceedings are conducted on the same adversarial basis. There is no argument that the conflict of interest rules do not apply with equal vigor in arbitration cases.

4. The comment states:

> A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

■ Although the arbitration panel's denial of the motion to continue was error, it was harmless. Reversal is not warranted because the error was not prejudicial to the district's substantial rights. *See Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982). The panel's refusal to grant a continuance did not constitute grounds to refuse confirmation of the award because the district was able to adequately present its case at the hearing. *See City of Scottsdale v. Kokaska,* 17 Ariz.App. 120, 130, 495 P.2d 1327, 1337 (1972). The district retained new counsel before the arbitration hearing. He assisted Pierson and fully participated in the hearing. The district has failed to show how it was harmed by denial of the motion to continue. Therefore, the arbitrators' error did not warrant denial of confirmation of the award, and accordingly the superior court did not abuse its discretion by confirming the award.

## II.

■ We next consider the question of attorneys' fees. We must decide whether:

(1) the arbitrators acted in excess of their powers by awarding $30,000 in attorneys' fees;

(2) A.R.S. section 12–1510 precluded an award of attorney's fees incurred in the arbitration proceeding;

(3) A.R.S. section 12–1514, which authorizes a trial court to award costs, precluded the trial court from awarding attorneys' fees; and

(4) the superior court erred by not holding a hearing to determine the reasonableness of the contractor's fee request.

After the trial court confirmed the arbitration award in its favor, the contractor filed an application for attorney's fees pursuant to A.R.S. section 12–341.01(A). Over the district's objection, the trial court granted the request in its entirety. Included in the award were fees incurred in both the arbitration proceedings and the confirmation action. The district challenges both.

■ We review an award of attorneys' fees and costs under A.R.S. section 12–341.01 under an abuse of discretion standard. *Rogus v. Lords,* 166 Ariz. 600, 603, 804 P.2d 133, 136 (App.1991).

The district asserts that the arbitrators "exceeded their powers by awarding $30,000 of attorneys' fees," in violation of A.R.S. section 12–1510: "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." The district argues that this section's prohibition against "counsel fees" precluded the arbitrators from awarding the $30,000, which it asserts represented attorneys' fees incurred by Transamerica.

The district's position is not supported by the record. The arbitration award simply does not contain any award of attorneys' fees to any party, and the record does not demonstrate that the amount of the award included fees.

■ Even if fees were awarded, A.R.S. section 12–1510 does not bar a party from recovering attorney's fees incurred in an arbitration proceeding. Section 12–1510 does not, either by its terms or by necessary implication, restrict the operation of the general attorney's fees statute, A.R.S. section 12–341.01. Rather, the clear language of the statute prohibits *the arbitrators* from making the award. *Insurance Co. of N. Am. v. Acousti Eng'g.,* 579 So.2d 77, 79–80 (Fla. 1991); *Zac Smith & Co. v. Moonspinner Condominium Ass'n,* 534 So.2d 739, 742 (Fla. App.1988); *Fewox v. McMerit Constr. Co.,* 556 So.2d 419 (Fla.App.1989), *aff'd and opinion adopted in Acousti Eng'g,* 579 So.2d at 79–80 (interpreting Section 682.11 Florida Statutes (1987), which is substantively identical to A.R.S. § 12–341.01). The statute does not bar the court from making a fee award when it confirms the arbitrators' decision.

■ The remaining question is whether A.R.S. section 12–341.01(A) authorizes the courts to award attorney's fees incurred in an arbitration proceeding. This statute allows courts to award attorney's fees in a "contested action" arising out of a contract. We believe an arbitration proceeding quali-

fies as such an "action." In *Semple v. Tri–City Drywall, Inc.*, 172 Ariz. 608, 838 P.2d 1369 (App.1992), we discussed this statutory language in holding that a proceeding before the Registrar of Contractors is not an "action" for purposes of section 12–341.01:

> The term "action" "in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law." *Black's Law Dictionary* p. 26 (5th ed. 1979). The common definition of "action" is "a proceeding in a court of justice by which one demands or enforces one's right." *Webster's Ninth New Collegiate Dictionary*, p. 54 (1984). Rule 3, Arizona Rules of Civil Procedure, provides that "[a] civil action is commenced by filing a complaint with the court."

All of these sources indicate that an action is a proceeding before a court of law. We acknowledge that an administrative agency acts in a quasi-judicial capacity when it operates under a statutory duty to consider evidence and apply the law to its findings. However, we do not believe that an administrative agency can be characterized as a court so that a proceeding before it could be called an "action" for purposes of A.R.S. section 12–341.01.

Furthermore, A.R.S. section 12–341.-01(B) provides that "[t]he award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation...." "Litigation" is defined as "[a] lawsuit ... Contest in a court of law for the purpose of enforcing a right or seeking a remedy. A judicial contest, a judicial controversy, a suit at law." *Black's Law Dictionary* p. 841 (5th ed. 1979). Similarly, A.R.S. section 12–341.01(D) states that attorney's fees awarded under the statute are to be awarded by the court, not the jury.

172 Ariz. at 611, 838 P.2d at 1372 (citations omitted). We contrasted the above definitions, each involving a court of law, with the proceedings before administrative agencies, which are not courts of law, and concluded that A.R.S. section 12–341.01 does not apply to administrative agencies.[5]

In contrast to administrative proceedings, arbitration is merely a substitute for litigation. It is a more convenient, speedy and economical forum in which to resolve disputes. Arbitration proceedings are conducted under the aegis of the courts. The arbitrators have no power to enforce an award: that power is reserved to the courts under the Uniform Arbitration Act. *Adam Martin Constr. Co. v. Brandon Partnership*, 135 Ill.App.3d 324, 90 Ill.Dec. 162, 164, 481 N.E.2d 962, 964 (1985). *See* A.R.S. § 12–1514 (1989). We conclude that the term "action," as used in A.R.S. section 12–341.-01(A), includes arbitration proceedings.

Including arbitration proceedings in the fee statute also best serves the Legislature's compensatory and deterrent purposes in enacting the statute. *Zac Smith*, 534 So.2d at 743; *Fewox*, 556 So.2d at 423–24. *See generally Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 395, 573 P.2d 80, 86 (App.1977) (purposes of A.R.S. § 12–341.01). We hold that section 12–341.01 authorizes the courts to award fees incurred in arbitration proceedings, and that section 12–1510 restricts only arbitrators—not courts—from awarding fees. *See Acousti Engineering*, 579 So.2d at 80; *Zac Smith*, 534 So.2d at 742; *Fewox*, 556 So.2d at 423–24; *B & H Const. Supply Co. v. District Bd. of Trustees*, 542 So.2d 382 (Fla.App.1989); *Consolidated Labor Union Trust v. Clark*, 498 So.2d 547 (Fla.App.1986).

5. Similarly distinguishable is *McEldowney v. Osborn School Dist.*, 123 Ariz. 416, 418, 600 P.2d 29, 31 (1979), holding that a lawsuit must have been commenced for there to be a "contested action." *See also Lake Havasu Resort, Inc. v. Commercial Loan Ins. Corp.*, 139 Ariz. 369, 377, 678 P.2d 950, 958 (App.1983) (where some contract claims are settled by stipulation without trial, attorney's fees arising from those claims cannot be awarded because neither party is regarded as "successful," even though other claims go to trial).

We disagree with the Nevada Supreme Court's resolution of this issue. In *County of Clark v. Blanchard Constr. Co.*, 653 P.2d 1217, 1220 (Nev. 1982), that court held that Nevada's general attorneys' fees statute, which authorized the award of attorneys' fees following a "trial or special proceeding," did not justify an award of attorneys' fees in an arbitration proceeding.

The district also challenges the trial court's award of fees incurred by the contractor in the superior court as precluded by A.R.S. section 12–1514:

> Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in confirmity [sic] therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

The district argues that the provision of section 12–1514 allowing the court to award costs, without any provision for attorney's fees, precludes such an award. Again, we disagree.

The judicial proceeding to confirm the arbitrators' award is an "action" for purposes of A.R.S. section 12–341.01. We held above that section 12–1510 does not preclude the operation of A.R.S. section 12–341.01. Neither does section 12–1514 preclude it. The statutory grant of the power to award costs does not detract from the court's authority under A.R.S. section 12–341.01(A), to award attorney's fees. *See Pima County v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988) ("when reconciling two or more statutes, courts should construe and interpret them, whenever possible, in such a way so as to give effect to all the statutes involved.") We conclude that the trial court had authority under A.R.S. section 12–341.01(A) to award the contractor its attorney's fees incurred in the superior court proceedings and that section 12–1514 does not bar such awards.

The district also argues that the superior court erred in failing to hold a hearing to determine the reasonableness of the fees the contractor requested. We disagree.

In response to the contractor's application for fees and its supporting affidavit, the district claimed that the amount sought was excessive and requested a hearing. While the local rules of the Superior Courts of Cochise and Maricopa Counties require such a hearing upon request,[6] Yavapai County has no such rule.

The contractor filed a detailed affidavit in support of its request. *Cf. Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983) (counsel should provide detailed affidavit to support fee request). In response, the district offered the affidavit of assistant attorney general Pierson, who stated:

> I am an Assistant Attorney General for the State of Arizona and I am assigned to the Civil Administrative Law Section of the Office of the Attorney General. I have occupied that position continuously since August 1984 and have been practicing law in the State of Arizona for over 25 years. *I believe that W.E.S. Construction Company, Inc.* [sic] *application for attorneys' fees is unreasonable.*

(Emphasis added.) This sweeping and conclusory allegation is neither enough to demonstrate the unreasonableness of the amount requested nor to show the need for a hearing. Just as the applicant's request requires detailed proof, objections must be specific. *See Dillig v. Fisher,* 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984) (objection to amount of attorney's fees as exorbitant insufficient; no evidence presented in support of claim or to illustrate reasonable fee); *cf. Church of Scientology v. United States Postal Serv.,* 700 F.2d 486, 494 (9th Cir.1983) (evidentiary hearing should be held if there are factual disputes over the elements comprising the fee award).

We conclude that the trial court did not abuse its discretion by making a fee award without holding a hearing. We also hold that the court did not abuse its discretion in granting the amount of attorney's fees requested, based on the documents filed in the superior court. We hesitate to overturn an award of attorney's fees given the superior court's familiarity with the litigation and our reluctance to review what are essentially factual matters. *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181,

---

6. Local Rules of Practice, 17B A.R.S., Cochise County Rule XXVI(b) and (c); Maricopa County Rule 3.7(e)(3).

1185 (1985). *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

The contractor has requested an award of its attorney's fees incurred in this appeal. In the exercise of our discretion under A.R.S. section 12–341.01(A), we decline to award its fees.

The judgment is affirmed.

VOSS, P.J., and GERBER, J., concur.